UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TINA MARIE LAURIANO, <br><br>                          Plaintiff, <br><br>                          v. <br><br> LUCKY CHICKEN CORP., et al, <br><br>                          Defendants. | 23 Civ. 9028 (DEH) <br><br> **OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

       Plaintiff Tina Marie Lauriano ("Plaintiff Lauriano" or "Lauriano") brings this action against Defendant Lucky Chicken Corp., Defendant Pinder Paul ("Defendant Pinder" or "Pinder"), and Defendant Rajinder Paul ("Defendant Rajinder" or "Rajinder") (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). *See* Compl., ECF No. 1. From approximately 2010 until November 2022, Plaintiff Lauriano worked at restaurant Lucky Chicken as a cashier, stocker, and cleaner. *Id.* ¶ 8. Lauriano alleges Defendants failed to pay her minimum wage, overtime, and spread of hours compensation in addition to failing to provide her with required wage statements and other required written notices. *See id.* ¶¶ 30-35. However, due to the applicable statute of limitations periods, Lauriano only asserts claims from October 2017 onwards.[1] *Id.* ¶ 24.

       Defendants now move for partial summary judgment, arguing that Rajinder cannot be held liable because he was not Lauriano's "employer" as defined by the FLSA and NYLL during the relevant statutory period. *See* Defs.' Mem. of L. in Supp. Mot. for Partial Summ. J. at 5, ECF No. 35. For the reasons that follow, Defendants' motion for summary judgement is **GRANTED**.

---

[1] The statute of limitations under the Fair Labor Standards Act is, at most, three years. *See* 29 U.S.C. § 255(a). The statute of limitations under the New York Labor Law is six years. N.Y. Labor Law §§ 198(3), 663(3).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). Disputes over an issue of material fact are "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must advance more than a "scintilla of evidence" to defeat a motion for summary judgment. *Id.* at 252. Indeed, the nonmoving party must demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In ruling on a motion for summary judgment, a court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).[2]

"To be an employer under the FLSA and NYLL, a person must possess control over a company's actual operations in a manner that relates to a plaintiff's employment." *Argudo v. Parea Grp. LLC*, No. 18 Civ. 678, 2019 WL 4640058, at *2 (S.D.N.Y. Sept. 24, 2019) (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)); *see also Camara v. Kenner*, No. 16 Civ. 7078, 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018) (noting that courts apply the same standards to the NYLL and collecting cases). "[T]his does not mean that the individual employer

---

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

must be responsible for managing plaintiff employees—or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules." *Irizarry*, 722 F.3d at 110. "Instead, the inquiry is a flexible one whose overarching concern is whether, under the totality of the circumstances, the alleged employer possessed the power to control the workers in question." *Argudo*, 2019 WL 4640058, at *2 (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

To guide this inquiry, courts apply four "nonexclusive and overlapping" factors known as the *Carter* factors. *Irizarry*, 722 F.3d at 105; *see also Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (enumerating the four-factor test). The four factors include: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12. "[S]atisfying all of these factors is not necessary to establish employer status," *Argudo*, 2019 WL 4640058, at *2 (citing *Greenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016)), as "[n]o one factor is dispositive and the inquiry into an employment relationship is fact intensive," *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12 Civ. 5565, 2014 WL 4793825, *3 (E.D.N.Y. Sept. 24, 2014).

The Second Circuit has further clarified that "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an employer without some involvement in the company's employment of the employees." *Irizarry*, 722 F.3d at 111. Instead, an individual is more likely to be an employer if they have "operational control" over employees, meaning that their "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.

**DISCUSSION**

*Ownership.* As an initial matter, the parties dispute whether Rajinder owned Lucky Chicken. *See* Defs.' Rule 56.1 Statement ¶ 7, ECF No. 36 ("Defendant Rajinder never owned any share of Lucky Chicken and has never been an officer of the corporation."); Pl.'s Rule 56.1 Statement ¶ 7, ECF No. 39 ("Disputed. Defendant Rajinder owned Lucky Chicken."). While both parties agree that Lucky Chicken was sold in November 2022, they dispute who sold the business. Defendants argue Lucky Chicken was sold by Defendant Pinder only, while Lauriano argues it was sold by both Pinder and Rajinder. *See* Pl.'s Rule 56.1 Statement ¶ 6. A genuine dispute therefore exists as to Rajinder's ownership of Lucky Chicken. By itself, however, "[e]vidence that an individual is an owner . . . of a company . . . is insufficient to demonstrate employer status" for FLSA and NYLL purposes. *Irizarry*, 722 F.3d at 109.

*Carter Factors One, Three, and Four.* Turning to the *Carter* factors, there is no genuine dispute between the parties that factors one (hiring/firing authority), three (pay decisions), or four (maintenance records) are absent as to Rajinder during the relevant statutory period. With respect to factor one, Lauriano states that Rajinder hired her when she began working at Lucky Chicken in or around 2010, but she does not dispute the fact that, since at least 2017, he has not been responsible for hiring and firing Lucky Chicken employees. *See* Pl.'s Rule 56.1 Statement ¶ 11(b).[3] As to factor three, Lauriano asserts that Rajinder informed her about her rate of payment when he hired her in or about 2010, but she does not assert that he determined the rate and method of payment for her or any other employees after 2017. *See* Pl.'s Aff. ¶ 7, ECF No. 38-2; Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") at 8, ECF No. 38.

---

[3] Defendants' Rule 56.1 Statement lists ¶¶ 10, 11, and 12 twice. As a result, Plaintiff's Rule 56.1 Statement also lists ¶¶ 10, 11, and 12 twice. Therefore, throughout this opinion, the Court distinguishes between these paragraphs by referring to the first as "(a)" and the second as "(b)." For example, here, the Court refers to ¶ 11(b).

And while the parties dispute whether factor four is present, the Court concludes that there is no genuine dispute of fact here, because there is no evidence in the record that Rajinder actually maintained the employment records in question. Lauriano states that she "observed Rajinder Paul going into Lucky Chicken's office" where there was "paperwork relating to the business such as bills . . . as well as employee information." *See* Pl.'s Aff. ¶ 13. But as Defendants note, "the mere fact that Rajinder would go into the room where the records of the business were stored" does not by itself constitute "proof that he took part in maintaining those records. . . . Plaintiff fails to allege that she has actual knowledge of what Rajinder did in that room, such as prepare the weekly schedule, or prepare the payroll." Defs.' Reply Mem. at 6, ECF No. 42.

*Carter Factor Two.* The principal dispute between the parties is over factor two—i.e., whether Rajinder supervised and/or controlled employee work schedules and conditions of employment. As explained below, while Lauriano puts forth some evidence regarding the degree of Rajinder's supervision, her showing is insufficient to establish the second *Carter* factor. Moreover, even assuming the contrary—i.e., that the record could support a finding of the second *Carter* factor in Lauriano's favor—the absence of the other three *Carter* factors is sufficient to warrant summary judgment against her on the issue of Rajinder's status as an employer.

As an initial matter, the parties dispute the extent of Rajinder's supervision. For instance, Rajinder states that "[s]ince at least 2017," he has not "supervised [employee] performance or scheduled their work hours." Defs.' Rule 56.1 Statement ¶ 9. Lauriano, on the other hand, contends that Rajinder "continued to supervise the performance of employees at Lucky Chicken up until November 2022." Pl.'s Rule 56.1 Statement ¶ 9; *see also id.* ¶ 12(b) ("Rajinder continued to supervise the staff at Lucky Chicken after he purchased another business in 2018.").[4]

---

[4] More specifically, Lauriano testifies that "[i]f [she] needed to cover another coworker's shift," it was Rajinder who "sometimes asked [her] to come in," and that he did so "throughout

5

The parties also dispute the extent to which Rajinder visited Lucky Chicken during the relevant statutory period and what he did when he visited. Lauriano states that Rajinder "came into the store two times a week," Pl.'s Aff. ¶ 11, and that when he was there, he "would direct [her] and other employees' duties [at Lucky Chicken,] even after he purchased a new business in or around 2018," Pl.'s Mem. at 7.[5] Rajinder, however, claims that, since at least 2017, he was "hardly ever at Lucky Chicken, and then only to grab a meal." Defs.' Rule 56.1 Statement ¶ 13. And the parties also dispute the extent to which Lucky Chicken employees called Rajinder for help when issues arose at the restaurant. Rajinder claims he was called only for "help with the computer," Defs.' Rule 56.1 Statement ¶ 12(a), while Lauriano claims he "was called for issues that Pinder could not handle," Pl.'s Rule 56.1 Statement ¶ 12(a); *see also* Pl.'s Dep. Tr. at 27:15-28:10, ECF No. 38-1.

Ultimately, however, these various disputes are immaterial for two reasons. First, although Lauriano claims Rajinder regularly visited the restaurant and exerted some degree of supervision,

---

[her] employment with Lucky Chicken." Pl.'s Aff. ¶ 8. Lauriano further testifies that Rajinder "would tell [her] to clean the store, . . . handle the customers, close the register, etc." *Id.* ¶ 11. Lauriano also states that she observed Rajinder "telling other employees about scheduling, such as asking the cook that worked upstairs . . . to come in on his day off," which "happened multiple times." *Id.* ¶ 14; *see also id.* ¶ 15 ("Rajinder Paul would speak to the employees in Spanish to discuss scheduling and other general questions up until my employment ended in November 2022."). She additionally says she observed Rajinder directing other Lucky Chicken employees, including "telling . . . the delivery man and grill man to help him bring in and stock the supplies from the market." *Id.* ¶ 12. According to Lauriano, Rajinder's direction of her and other employees' schedules and conditions of employment occurred regularly up until her employment ended in November 2022. *See id.* ¶¶ 8, 11, 12, 14, 15.

[5] Specifically, Lauriano says that "Defendant Rajinder would come into Lucky Chicken about two times a week after 2018 until the end of Plaintiff's employment . . . in November 2022." Pl.'s Mem. at 7; *see* Pl.'s Rule 56.1 Statement ¶ 13 ("Rajinder visited Lucky Chicken two times per week"). During his visits, Lauriano alleges Rajinder "would often buy supplies for the store, direct the employees' duties (including Plaintiff), and spend time in the restaurant's office." Pl.'s Rule 56.1 Statement ¶ 13; *see* Pl.'s Aff. ¶¶ 11-15. For his part, Rajinder denies that he purchased a new business in 2018 and testifies instead that he "left Lucky Chicken to open [his] own restaurant" far earlier, around 2009. Def. Rajinder Paul Aff. ¶ 4, ECF No. 37-1.

she also testified that Pinder primarily directed her duties and set her work schedule, particularly near the end of her employment at the restaurant. When asked "who directed [her] duties" at Lucky Chicken, Lauriano replied "[m]ost of the time it was Pinder Paul." Pl.'s Dep. Tr. at 39:9-12. And when asked if she remembered who provided her with her work schedule and "called [her] in on [her] days that [she] worked," Lauriano replied "[t]owards the end" and "towards the whole entire time it was Pinder Paul." *Id.* at 39:21-40:4. Thus, even crediting Lauriano's testimony suggesting that Rajinder "may have had a degree of influence" over Lauriano's work at Lucky Chicken, "it is not enough to show meaningful control" by Rajinder over Lauriano's "work schedules or conditions of employment." *Martin v. Spring United Management Co.*, 273 F. Supp. 3d 404, 427 (S.D.N.Y. 2017); *see also Irizarry*, 722 F.3d at 113-15 (concluding the second *Carter* factor was not satisfied even though the defendant visited stores regularly and "address[ed] problems that occurred in individual stores"). Here, viewing the evidence in the light most favorable to Lauriano, at best, "[o]nly the [second] *Carter* factor is even partially satisfied," which is insufficient. *Tapia v. Blch 3rd Ave. LLC*, No. 14 Civ. 8529, 2016 WL 4581341, at *8 (S.D.N.Y. Sept. 1, 2016), *aff'd sub nom*. *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58 (2d Cir. 2018).

Second, even assuming *arguendo* that the second *Carter* factor weighed more clearly in Lauriano's favor, "several courts in this Circuit have found that an ownership interest coupled with a role in supervising employees is not sufficient to sustain individual FLSA liability." *Tapia*, 2016 WL 4581341, at *8; *see also Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 450-51, 464-65 (concluding that the CEO and majority shareholder of a restaurant was not an "employer" even though she was, *inter alia*, at the restaurant "every day," gave bussers directions, sometimes signed paychecks, and ran "front-of-the-house duties"); *Juarez v. Precision Apparel, Inc.*, No. 12 Civ. 2349, 2013 WL 5210142, at *7 (E.D.N.Y. Sept. 13, 2013) (concluding that an employee who

7

gave plaintiff "instructions in the performance of his duties," "sometimes paid Plaintiff," and had an ownership interest in the business was not plaintiff's "employer" under the FLSA).

* * *

In sum, the first, third, and fourth *Carter* factors weigh against a finding that Rajinder was Lauriano's employer. And the record with respect to the second *Carter* factor, even viewed in the light most favorable to Lauriano, is insufficient to establish that factor in her favor. While Lauriano submits evidence that Rajinder may have exerted some authority with respect to Lauriano's work schedule and duties, this evidence alone is insufficient to support the conclusion that Rajinder "possessed the power to control" Lauriano, particularly in light of Lauriano's statements that Pinder was the one who actually possessed such power. *Herman*, 172 F.3d at 139. Finally, even if this factor weighed more clearly in Lauriano's favor, it would not, even when combined with evidence of Rajinder's ownership, demonstrate that Rajinder exercised sufficient "control" over Lauriano such that he is liable as her employer under the FLSA and NYLL.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is **GRANTED**. The Clerk of Court is respectfully requested to terminate ECF No. 34.

SO ORDERED.

Dated: July 1, 2025

New York, New York

_____
DALE E. HO
United States District Judge